TROTTER v. FURNITURE CO.*

(*Knoxville.* September 28, 1898.)

MASTER AND SERVANT. *Promise to repair will not avail servant, when.*

A promise by the master to repair a defective appliance does not relieve the servant from the assumption of the risk in continuing in his employment after the expiration of the time for fulfillment of the promise, under circumstances which indicate that the promise will not be fulfilled.

Cases cited: Railroad v. Handman, 13 Lea, 423; Brewer v. Tenn. C. & I. Co., 97 Tenn., 615; 8 So. Rep., 216, 218; 95 Wis., 6.

FROM HAMILTON.

Appeal in error from Circuit Court of Hamilton County. FLOYD ESTILL, J.

PAYNE & PAYNE for Trotter.

PRITCHARD & SIZER for Furniture Co.

WILKES, J. This is a suit by an employe against his employer for injuries sustained in his employment, and alleged to be due to the employer's negligence. The declaration alleges unsafe, unsuitable,

---

*The rights of a servant who continues work on the faith of his master's promise to remove a specific cause of danger, are discussed in an elaborate note to *Illinois Steel Co.* v. *Mann* (Ill.), 40 L. R. A., 781.—REPORTER.

and dangerous condition of a saw, and the machinery and apparatus attached thereto. The first count charges that this want of safety was known to defendant company, but not to the plaintiff. The second count alleges that the defendant promised plaintiff to have same repaired immediately, and plaintiff, relying upon said promise and believing that defendant would repair as it had promised to do, continued to operate it. The plaintiff introduced his evidence, and it was formally demurred to, and there was joinder in the demurrer and a trial before the Judge, who sustained the demurrer and dismissed the plaintiff's suit, and he has appealed and assigned as error this action of the trial Judge and his refusal to submit the evidence to the jury which had heard it.

The evidence showed that the plaintiff was a man about twenty-eight years of age; that he had been in the employ of the defendant company several years, for two of which he had operated the saw which injured him, and for six or seven years had operated a trip saw. About ten days before the injury, a rope attached to the saw frame operated by the plaintiff broke. It was attached to the frame at one end and to a weight at the other, and its function was to hold the saw frame back against the wall when not in use. It was pulled out when wanted for use by a handle attached to the frame, and, after being used, the handle would be released and the weight would pull the frame back out of the way.

When the rope broke, the plaintiff reported the fact to Lockwood, the repairer of the defendant's machinery, and he tied the rope together, and on plaintiff's objecting to running it that way, because dangerous, Lockwood went to Parham, general manager, and told him the rope was broken, and he would like to have a new one. Parham asked, "Do you want it now, or will morning do you?" to which Lockwood replied, "I will let it go until morning," and Parham said, "I will bring it down with me in the morning."

Lockwood returned to plaintiff and told him what Parham had promised, and said he thought the mended rope was sound and sufficient until then, and for him to go on with it until the next morning. The new rope was not brought in the morning, and plaintiff continued to operate the saws with the old rope as it was for some ten days, without further complaint, when it again broke. The saw flew out and struck plaintiff's arm, and injured his elbow. The plaintiff went to his mother and had his arm bound up, and she attended to it for some ten days or more, when a physician examined it and dressed the arm several times. Plaintiff was disabled from work for some months, and, according to his statement, his arm is stiff and severely injured.

It is evident that plaintiff could not on this evidence, recover upon the first count in the declaration, which alleged knowledge of defects on part of

the company and want of knowledge on plaintiff's part. If he can recover at all, it must be on the second count.

The general rule is, that a servant assumes the risks when he enters or continues in employment, when he knows the tools or machinery are dangerous, unfit, and unsuitable, but nevertheless works with them and is injured. Bailey's Personal Injuries, Secs. 506, 510; *Railroad Co.* v. *Handman*, 13 Lea, 423; *Brewer* v. *Tenn. Coal & Iron Co.*, 13 Pickle, 615.

In order to recover in such cases, he must show knowledge or negligent ignorance on the part of the master, and a want of knowledge or excusable ignorance on the part of the servant (*Railroad Co.* v. *Handman*, 13 Lea, 430); and when each is equally competent to judge of the risks and hazards, there is no ground of recovery. Bailey's Personal Injuries, Sec. 778.

This case must, however, turn largely upon the effect of the promise to repair. The averment is that the promise was to repair immediately, and that a new rope would be furnished the next morning. The averment is not that plaintiff was led to continue in the employment by the promise, but is only that he believed the repair would be made, and relied on the master's promise. "It must appear that the servant was led to continue in the employment by the master's promise that the defect complained of would be removed." Bailey's Master's

Liability, 208; *Brewer* v. *Tenn. Coal & Iron Co.*, 13 Pick., 615, 619.

The assurance of the master that the defect shall be remedied is an agreement by him that he will assume the risk for a reasonable time. This promise will be implied to continue only a reasonable time, and the injury must have occurred within the time within which the defects were promised to be removed. If the employe continues longer than this, he does so without reliance on the promise, and is as hazardous and hopeless of remedy as though the promise had not been made. It is a waiver of the defects agreed to be remedied. Bailey, Personal Inj., Secs. 3112, 3112*a*.

In *Eureka Co.* v. *Bass*, 8 So. Rep., 216, 218, the Supreme Court of Alabama said: "The injury must have occurred within the time at which the defects were promised to be remedied. If the employe continues to expose himself to the danger by remaining in service longer than this, he does so in the face of the fact that the promise of the employer is violated, and that he had no reasonable expectation of its fulfillment. He can therefore no longer rely upon the promise. A promise already broken can afford no reasonable guaranty of the fulfillment of any expectation based on its disappointed assurances. 2 Bailey's Pers. Inj., Secs. 3106, 3107.

In this case the appliance was of the simplest nature. The danger was obvious, and better known

to plaintiff than perhaps anyone else. He continued to use the broken rope without complaint. He made no demand to have the defect remedied after the failure to furnish the new rope next morning. He continued to operate the saw for ten days. In the meantime the repairer, Lockwood, had left the employ of the company, and plaintiff made no complaint to his successor, and must be held to have taken the risks, and not to be relying on the defendant's promises. *Erdman* v. *The Illinois Steel Co.*, 95 Wis., 6 (S. C., 60 Am. St. Reps., 66).

The failure to supply the new rope the next morning, as promised, was no doubt due to the fact that Lockwood, whose business it was to supply it, left the employ of the company, and no doubt the rope would have been supplied if Parham, the general manager, had been reminded of the condition of affairs and his promise. However this may be, the plaintiff continued, without further protest, to use the old rope, and must be held to have taken the risks. We do not think it would have been proper in this case to have submitted to the jury the question as to what was reasonable time. The promise fixed the time.

Let the judgment be affirmed with costs.